# United States Court of Appeals for the Federal Circuit

BAYER PHARMA AKTIENGESELLSCHAFT,

*APPELLANT,*

*v.*

MYLAN PHARMACEUTICALS INC.,
TEVA PHARMACEUTICALS USA, INC.,
INVAGEN PHARMACEUTICALS, INC.,

*APPELLEES.*

On Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in IPR2022-00517
Honorable Ryan Holbrook Flax, Administrative Patent Judge;
Honorable Tina E. Hulse, Administrative Patent Judge; and
Honorable Robert A. Pollack, Administrative Patent Judge

**APPELLANT BAYER PHARMA AKTIENGESELLSCHAFT'S
PETITION FOR REHEARING *EN BANC***

Dov P. Grossman
Alexander S. Zolan
Ben Picozzi
**Williams & Connolly LLP**
680 Maine Avenue SW
Washington, DC 20024
(202) 424-5000
dgrossman@wc.com
azolan@wc.com
bpicozzi@wc.com

*Attorneys for Appellant*

October 22, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**  2023-2434

**Short Case Caption**  Bayer Pharma Aktiengesellschaft v. Mylan Pharmaceuticals Inc.

**Filing Party/Entity**  Bayer Pharma Aktiengesellschaft

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/22/2025

Signature: /s/ Dov P. Grossman

Name: Dov P. Grossman

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Bayer Pharma Aktiengesellschaft | Bayer AG | Bayer AG |
| | Janssen Pharmaceuticals, Inc. | Johnson & Johnson (Janssen) |
| | Bayer Intellectual Property GmbH | Bayer AG |
| | Bayer U.S. LLC | Bayer AG |
| | Bayer Medical Care Inc. | Bayer AG |
| | Bayer HealthCare LLC | Bayer AG |
| | | |
| | | |
| | | |
| | | |
| | | |

☐      Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Kathryn S. Kayali | Williams & Connolly LLP | represented Bayer in the IPR |
| Julie L. Tavares | Williams & Connolly LLP | represented Bayer in the IPR |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF COUNSEL UNDER FED. CIR. R. 40(c) .................................. 1

PRELIMINARY STATEMENT .......................................................... 2

BRIEF SUMMARY OF THE BOARD AND PANEL DECISIONS ...................... 3

ARGUMENT ............................................................................ 6

I.  The Claim Phrase "Clinically Proven Effective" Is "Material to Patentability" Under the Standard Articulated in *Allergan*. ........................... 7

II. The Panel Decision Suggests a Lack of Clarity in This Court's Precedent. ................................................................................. 11

    A. The Panel Decision Failed to Apply *Allergan*. ................................. 11

    B. The Panel Decision Raises Questions About the Scope of the Printed-Matter Doctrine. .................................................... 12

    C. The Panel Decision Raises Questions Concerning the Role of Policy in Assessing Patentability. ....................................... 15

III. A Proposed Resolution of the Court's Precedent. ................................ 16

CONCLUSION .......................................................................... 18

CERTIFICATE OF SERVICE ......................................................... 20

CERTIFICATE OF COMPLIANCE .................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Allergan Sales, LLC v. Sandoz, Inc.*,
935 F.3d 1370 (Fed. Cir. 2019) ............................................................. passim

*AstraZeneca LP v. Apotex, Inc.*,
633 F.3d 1042 (Fed. Cir. 2010) .................................................................13

*Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*,
246 F.3d 1368 (Fed. Cir. 2001) ..................................................... 4, 8, 9, 16

*C R Bard Inc. v. AngioDynamics, Inc.*,
979 F.3d 1372 (Fed. Cir. 2020) .................................................................13

*Hoffer v. Microsoft Corp.*,
405 F.3d 1326 (Fed. Cir. 2005) .................................................................12

*In re Copaxone Consolidated Cases*,
906 F.3d 1013 (Fed. Cir. 2018) ...................................................................9

*In re Gulack*,
703 F.2d 1381 (Fed. Cir. 1983) ..............................................................2, 13

*In re Ngai*,
367 F.3d 1336 (Fed. Cir. 2004) ................................................... 2, 12, 13, 17

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021) .....................................................................7

*Invitrogen Corp. v. Biocrest Manufacturing, L.P.*,
327 F.3d 1364 (Fed. Cir. 2003) .................................................................12

*King Pharmaceuticals, Inc. v. Eon Labs, Inc.*,
616 F.3d 1267 (Fed. Cir. 2010) ............................................................. passim

*L.A. Biomedical Rsch. Ins. at Harbor-UCLA Med. Ctr. v. Eli Lilly & Co.*,
849 F.3d 1049 (Fed. Cir. 2017) ...................................................................8

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
572 U.S. 915 (2014).....................................................................................7

*Mobility Workx, LLC v. Unified Patents, LLC*,
    15 F.4th 1146 (Fed. Cir. 2021) .......................................................14

*Mylan Pharmaceuticals, Inc. v. Bayer Pharma AG*,
    No. IPR2022-00517, Paper 67 (P.T.A.B. May 31, 2023) ...........................14

*Praxair Distribution, Inc. v. Mallinckrodt Hospital Products IP Ltd.*,
    890 F.3d 1024 (Fed. Cir. 2018) ............................................. 13, 17

*Solvay S.A. v. Honeywell International Inc.*,
    742 F.3d 998 (Fed. Cir. 2014) .......................................................11

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)..........................................................................7

*Wasica Finance GmbH v. Continental Automotive Systems, Inc.*,
    853 F.3d 1272 (Fed. Cir. 2017) ....................................................7

**Statutes**

35 U.S.C. § 101 ................................................................ 6, 7, 17, 18

35 U.S.C. § 102 .......................................................................18

35 U.S.C. § 103 .......................................................................18

**Rules**

Fed. R. Evid. 201(b)(2) ...............................................................14

# STATEMENT OF COUNSEL UNDER FED. CIR. R. 40(c)

Based on my professional judgment, I believe the panel decision is contrary to the following decision(s) of the Supreme Court of the United States or the precedent(s) of this Court:

- *Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370 (Fed. Cir. 2019)
- *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, 616 F.3d 1267 (Fed. Cir. 2010)

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

- When may a court discount a claim limitation in the body of a claim for purposes of assessing patentability?

Respectfully submitted,

OCTOBER 22, 2025

/s/ Dov P. Grossman
DOV. P. GROSSMAN
**WILLIAMS & CONNOLLY LLP**
680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000

*Attorney for Appellant*

# PRELIMINARY STATEMENT

This Petition presents the important, precedent-setting question of when a court may discount a claim term in the body of a claim for purposes of assessing patentability. The importance of this question—which arises in countless cases—cannot be understated. The panel's decision here did not adhere to prior decisions of this Court, suggesting that there is a lack of clarity in the Court's precedent for how to evaluate the question. Under one approach, applied in *Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370 (Fed. Cir. 2019), a term in the body of a claim is limiting—and therefore properly considered in a patentability analysis—if claim construction-based principles demonstrate that the term is "material to patentability." *Id.* at 1374, 1376. If the claim term passes this test, it must be considered in assessing the requirements for patentability. Under a second approach, reflected in this Court's printed-matter doctrine, an instructional limitation (*e.g.*, a limitation directed to providing information) in the body of a claim is not relevant to patentability unless it has a "new and unobvious functional relationship" to a claimed method, *i.e.*, if it is "not functionally related" to the claimed method. *King Pharms., Inc. v. Eon Lab'ys, Inc.*, 616 F.3d 1267, 1278-79 (Fed. Cir. 2010) (quoting *In re Ngai*, 367 F.3d 1336, 1338 (Fed. Cir. 2004); *In re Gulack*, 703 F.2d 1381, 1385 (Fed. Cir. 1983)). In those circumstances, the limitation "is not independently patentable." *Id.* at 1278-79 (citing *Gulack*, 703 F.2d at 1385).

In this appeal, the panel applied a new, third approach, which (1) did not assess whether the limitation in question was material to patentability, but instead (2) borrowed language from the functional-relationship test employed in this Court's printed-matter cases, and (3) further relied on policy considerations concerning whether the limitation in question sought to "claw back" subject matter from the public domain. Using that approach, the panel concluded that the limitation—which was neither an instructional limitation nor alleged to be—was "functionally unrelated" to the other elements in the claimed methods, and on that basis discounted the limitation for patentability purposes. Slip Op. 7.

Given the panel's novel approach, Petitioner Bayer Pharma Aktiengesellschaft ("Bayer") respectfully requests that the Court rehear this case *en banc* and clarify this Court's case law as to the standard that underlies the question surrounding when a court can permissibly discount a claim term in the body of a claim during a patentability analysis. This case highlights the inconsistences surrounding this Court's treatment of the issue and is therefore an excellent vehicle for the Court to address this question.

## BRIEF SUMMARY OF THE BOARD AND PANEL DECISIONS

Bayer owns the patent-at-issue, U.S. Patent No. 10,828,310 (the "'310 patent"). The patent relates to Xarelto® (rivaroxaban), a direct oral anticoagulant which is used in its 2.5 mg strength in combination with aspirin to reduce the risks

of certain major cardio- or thrombotic vascular events in patients with coronary or peripheral artery disease. The patent claims methods of administering rivaroxaban and aspirin in amounts that are "clinically proven effective" to reduce such risks.

In the underlying *inter partes* review, the Patent Trial and Appeal Board held that claims 1-4 were unpatentable on the grounds that the requirement of administering "clinically proven effective" amounts of rivaroxaban and aspirin was non-limiting under *Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368 (Fed. Cir. 2001) ("*BMS*"). Appx0011-Appx0019.[1] In the alternative, the Board held that the claims were inherently anticipated or obvious. Appx0023-Appx0027; Appx0030-Appx0032.

On appeal, Bayer explained that the subsequent *Allergan* decision analyzed *BMS* and explained that whether a claim term is limiting, and thus factored into a patentability analysis, depends on whether it is "material to patentability"—a claim construction-based inquiry that examines "the language of the claims," "specification, and prosecution history," including in particular whether the limitation was "expressly relied on to define the claimed methods and distinguish them from the prior art." *Allergan*, 935 F.3d at 1374, 1376; ECF No. 33 ("Br."), at

---

[1] The Board also held that claims 5-8 were unpatentable based on other grounds. The panel vacated that aspect of the Board's decision. Slip Op. 5-9.

25-40. Bayer explained both in its briefing and at oral argument why "clinically proven effective" was material to patentability, relying in part on *Allergan*. *See, e.g.,* Br. 30-31, 35-40; ECF No. 51 ("Reply"), at 6, 10-13; ECF No. 77 ("Oral Arg.") at 0:20-10:36, 42:25-44:42.

The panel of this Court declined to adopt any of the Board's rationales. Instead, the panel relied on a version of the functional-relationship test articulated in *King*, 616 F.3d 1267, which had theretofore been applied only to instructional limitations under the so-called printed-matter doctrine, Slip Op. 5-7. Specifically, the panel concluded that whether or not the phrase "clinically proven effective" was limiting, it should not be factored into the patentability analysis because it was "a functionally unrelated limitation that fails to make the challenged claims patentable." *Id.* at 5-6. Notably, Respondents never argued before the Board or this Court that "clinically proven effective" was a "functionally unrelated" (or "not functionally related") limitation. Nor did Respondents raise the printed-matter doctrine as part of their challenge. To the contrary, they affirmatively stated at oral argument before the Board that they were *not* relying on that doctrine. *See infra* Section II.B. The panel relied on a concurring opinion in *Allergan* to distinguish the case on its facts, without assessing whether the disputed claim phrase was "material to patentability." Slip Op. 6-7. In reaching these conclusions, the panel also invoked policy considerations concerning whether a limitation would allegedly "claw back"

subject matter from the public domain, and on that basis determined that "clinically proven effective" should not be given any weight in determining patentability. *Id.* at 5-6.

## ARGUMENT

Bayer respectfully requests that this Court grant rehearing *en banc*, clarify the test for when limitations in the body of a claim may be discounted in a patentability analysis, vacate the panel's decision regarding claims 1-4, and remand for consideration of whether those claims are inherently anticipated or obvious. As articulated in *Allergan*, the standard for whether a claim term in the body of a claim is limiting—and thus factored into a patentability analysis—is whether it is material to patentability. Once that determination is made, then the proper course is to consider that limitation in analyzing whether the claim satisfies the requirements for patentability.

The question of whether a limitation is "functionally unrelated" to the claimed method should only be considered in connection with this Court's printed-matter doctrine, which should be confined to its historical role of evaluating instructional limitations. This Court has interpreted the printed-matter doctrine as an outgrowth of 35 U.S.C. § 101. Thus, when faced with an *instructional limitation*, a court could conclude that the limitation was "material to patentability," but nevertheless failed

the functional-relationship test and thus did not add patentable weight because it failed to comply with Section 101.

Application of these principles to the present case leads to vacatur of the panel's decision for claims 1-4: The claim phrase "clinically proven effective" is material to patentability, it is not an instructional limitation, and in any event, Respondents (correctly) disclaimed any reliance on the printed-matter doctrine. *En banc* review is warranted.

## I. The Claim Phrase "Clinically Proven Effective" Is "Material to Patentability" Under the Standard Articulated in *Allergan*.

A focus of Bayer's arguments on appeal was whether the claim phrase "clinically proven effective" was "material to patentability," and thus must be considered in analyzing patentability. Br. 30-31, 35-40; Reply 6, 10-13; Oral Arg. at 0:20-10:36, 42:25-44:42. As a general rule, "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)). Thus, "[i]t is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) (quoting *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017)).

This Court has described a narrow exception to that rule for claim terms that recite "only a statement of purpose and intended result." *BMS*, 246 F.3d at 1376. To determine whether a term is non-limiting under this framework, a court should inquire whether the term is "material to patentability," based on an analysis of "the language of the claims," "specification, and prosecution history," including in particular whether the limitation was "expressly relied on to define the claimed methods and distinguish them from the prior art." *Allergan*, 935 F.3d at 1374, 1376; *see also L.A. Biomedical Rsch. Ins. at Harbor-UCLA Med. Ctr. v. Eli Lilly & Co.*, 849 F.3d 1049, 1060-62 (Fed. Cir. 2017) (concluding that claim phrase was limiting based on analysis of claim structure and specification).

In *Allergan*, for example, the claim at issue recited a method of treatment comprising administering specific doses of two ophthalmic drugs "wherein the method is as effective as" a prior-art method and "wherein the method reduces the incidence of one o[r] more adverse events" as compared to that prior method. *Id.* at 1372-73 (emphasis omitted). Similar to the fact pattern here, the question presented was whether the "wherein" phrases were limiting given the dosages recited earlier in the claim. *Id.* at 1373-74. Even though the "wherein" phrases did not transform the manipulative steps of the method, this Court concluded that the phrases were limiting because (1) the "specification demonstrate[d] that Allergan believed the increased efficacy and safety of the claimed methods to be material to patentability";

and (2) both Allergan and the examiner "relied upon" the "wherein" phrases in explaining why the claims were patentable over the prior art. *Id.* at 1375-76.

Conversely, in *BMS* and *In re Copaxone Consolidated Cases*, 906 F.3d 1013 (Fed. Cir. 2018), this Court held that the claim terms at issue were not limiting because claim-construction principles did not compel that conclusion. In *BMS*, the file history reflected that the claims were amended to include the limitation at issue *after* the examiner had already indicated that the claims were allowable. 246 F.3d at 1375. Thus, the terms played no role in determining the patentability of the issued claims. *See id.* Similarly, in *Copaxone*, the Court held that the disputed claim terms were not "necessary or relevant to the examiner's approval"; thus, the fact that the claims were amended to include those terms during prosecution did not demonstrate that the terms were limiting. 906 F.3d at 1024.

Here, like *Allergan*, and unlike *BMS* and *Copaxone*, an examination of the intrinsic record compels the conclusion that the phrase "clinically proven effective" is limiting. For example, the claim language and specification demonstrate that Bayer "believed the increased efficacy and safety of the claimed methods to be material to patentability." *Allergan*, 935 F.3d at 1374-76. As of the priority date, neither rivaroxaban nor any other anticoagulant had been proven clinically effective in patients with stable atherosclerotic disease, including coronary and/or peripheral artery disease. Instead, as explained in the patent's specification, an earlier

anticoagulant study had shown the drug in that study did *not* "reduce major adverse cardiovascular events but [did] increase the risk of life-threatening bleeding." Appx0057 (2:1-22).  Accordingly, the specification emphasizes that "*the invention*," repeated in the claims, rests on the discovery that the claimed doses of rivaroxaban and aspirin were "clinically proven effective in reducing the risk of myocardial infarction, stroke or cardiovascular death in a human patient with coronary artery disease and/or peripheral arterial disease."  Appx0058 (3:47-67) (emphasis added). The specification further makes clear that this discovery was predicated on the *results* of the Phase III trial (COMPASS) that provided the clinical proof of efficacy for the rivaroxaban-plus-aspirin combination, which comprise the specification's only example.  Appx0058 (3:27-34); Appx0063-0065 (13:35-18:54).

Furthermore, Bayer and the U.S. Patent & Trademark Office "expressly relied on" the phrase "to define the claimed methods and distinguish them from the prior art."  *Allergan*, 935 F.3d at 1376.  In a supplemental examination, Bayer submitted four references to the Office, including a ClinicalTrials.gov posting for the COMPASS trial disclosing the claimed dosages but not the results of the trial.  Bayer distinguished those references from the claimed invention, arguing, "Because the claims recite administering rivaroxaban and aspirin in amounts that are *clinically proven effective*, the claims are patentable and not anticipated [by the ClinicalTrials.gov posting]."  Appx3321-Appx3322 (emphasis added).  The Office

agreed, finding, "None of the items of information discloses information regarding the efficacy of the claimed treatment methods, *i.e. results of the clinical trial*, which was available prior to the critical date of February 2, 2017." Appx3541-Appx3542 (emphasis added). The Office thus declined to order reexamination. *Id.*

Thus, the evidence established that the phrase "clinically proven effective" was material to patentability, and the Board's decision not to account for that language in assessing patentability should have been vacated.

## II. The Panel Decision Suggests a Lack of Clarity in This Court's Precedent.

### A. The Panel Decision Failed to Apply *Allergan*.

The panel did not apply the standard set forth in *Allergan*, but instead distinguished it on its facts. In doing so, the panel's decision suggests that there is a lack of clarity in this Court's case law.

As an initial matter, the panel's rationale for distinguishing *Allergan* does not pass muster. According to the panel, *Allergan*'s legal rule did not apply because "the claims at issue [in *Allergan*] were 'written in open format' with the 'wherein' clauses modifying the overall composition rather than any specifically recited ingredients within the composition." Slip Op. 6-7 (quoting *Allergan*, 935 F.3d. at 1378-79 (Prost, C.J., concurring)). But the claims at issue here are also "comprising" claims and therefore "open-ended." *Solvay S.A. v. Honeywell Int'l Inc.*, 742 F.3d 998, 1005 (Fed. Cir. 2014) (quoting *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327

11

F.3d 1364, 1368 (Fed. Cir. 2003)). Thus, the panel's explanation of why *Allergan* does not control this case offers no guidance for future courts and parties confronting similar issues of patentability.

More fundamentally, the panel's opinion suggests there is a lack of clarity concerning the application of this Court's approaches to addressing when courts may discount terms in the body of a claim during a patentability analysis. If, as *Allergan* held, application of claim construction-based principles demonstrates that a claim term is material to patentability—as the specification and prosecution history plainly do in this case—it cannot be "ignored" in a patentability analysis because doing so would "change the substance of the invention." *Allergan*, 935 F.3d at 1376 (quoting *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329 (Fed. Cir. 2005)). Nevertheless, the panel decision skipped over *Allergan*'s "material to patentability" test entirely and applied instead a "functional relationship" test that was borrowed from this Court's printed-matter cases. Neither the panel decision nor any precedent of this Court provides any guidance as to how these different approaches interact. That warrants this Court's *en banc* consideration.

## B. The Panel Decision Raises Questions About the Scope of the Printed-Matter Doctrine.

The panel decision also raises questions about the scope of this Court's printed-matter doctrine. Historically, this Court has confined the doctrine to instructions or other printed information. *See, e.g.*, *In re Ngai*, 367 F.3d at 1338 (kit

containing information subject to printed-matter doctrine); *In re Gulack*, 703 F.2d at 1385 (providing an endless series of numbers not subject to the printed-matter doctrine). In *King*, this Court confirmed that the doctrine applies to method steps involving instructional limitations, in addition to structural claims consisting of information. *King*, 616 F.3d at 1278-79 (quoting *Ngai*, 367 F.3d at 1338; *Gulack*, 703 F.2d at 1385). The phrase at issue here—"clinically proven effective"—is not an instructional limitation. Nor was it ever alleged to be before this Court or the Board. While post-*King* decisions of this Court have invoked the printed-matter doctrine to invalidate methods of treatment, Bayer is unaware of any case where this Court applied the doctrine under the circumstances present in this case. *See, e.g.*, *C R Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1381 (Fed. Cir. 2020) ("[P]rinted matter encompasses any information claimed for its communicative content, and the doctrine prohibits patenting such printed matter unless it is 'functionally related' to its "substrate . . ."); *Praxair Distrib., Inc. v. Mallinckrodt Hosp. Prods. IP Ltd.*, 890 F.3d 1024, 1033 (Fed. Cir. 2018) (mental steps of providing information); *In re Huai-Hung Kao*, 639 F.3d 1057, 1072-74 (Fed. Cir. 2011) (similar); *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1063-65 (Fed. Cir. 2010) (kit containing instructions).

The panel's reliance on the functional-relationship test presents additional issues given the posture of this case. Respondents *expressly disavowed* relying on

the printed matter doctrine when questioned by the Board at oral argument in the *inter partes* review. *See Mylan Pharms., Inc. v. Bayer Pharma AG*, No. IPR2022-00517, Paper 67, at 60 (P.T.A.B. May 31, 2023), https://ptacts.uspto.gov/ptacts/public-informations/petitions/1549096/download-documents?artifactId=NoKGUowzkLTo5M0C-kT43gl6XBK3gZTPD7hcxNKiqPcr-q-fvL6CAN0 ("JUDGE POLLOCK: Counsel, have you argued on the papers somewhere that "clinically proven effective" should be given no weight under the printed matter doctrine? [RESPONDENTS' COUNSEL]: That is a novel theory that we did not -- we did not claim."). Instead, before the Board and this Court, Respondents framed their arguments—including their discussion of *King*—exclusively in terms of whether the phrase "clinically proven effective" was limiting or, alternatively, inherently anticipated. ECF No. 40, at 21-43. (Because Respondents did not seek to present any argument based on printed matter, the above-quoted passage was not included in the Joint Appendix. Nevertheless, this Court can take judicial notice of the Board transcript, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" (here, USPTO's PTACTS website). *Mobility Workx, LLC v. Unified Patents, LLC*, 15 F.4th 1146, 1151 (Fed. Cir. 2021) (quoting Fed. R. Evid. 201(b)(2)).) Thus, the printed matter doctrine is not a proper basis for concluding that claims 1-4 are unpatentable. By nonetheless invoking the functional-relationship test—but without mentioning the printed-matter

doctrine—the panel decision suggests that the test may apply outside the printed-matter context, as a free-standing test for evaluating claim terms and whether they may be discounted in analyzing patentability, irrespective of whether the claims are "material to patentability" under *Allegan*. That too warrants *en banc* review.

### C. The Panel Decision Raises Questions Concerning the Role of Policy in Assessing Patentability.

The panel's decision also raises the question of when policy considerations can be employed in assessing whether a claim term may be discounted for purposes of assessing patentability. As justification for applying the functional-relationship test, the panel focused on policy considerations regarding whether a patentee could "claw back" subject matter "from the public domain," by adding a novel limitation to an otherwise "anticipated method of treatment," using "Best Drug of 2026" as an example. Slip Op. 6 (quoting Oral Arg. Tr. 5:47-6:55). However, whether a claim attempts to "claw back" subject matter depends on the premise that the subject matter in question was already in the public domain—the very question that this Court's tests for assessing when claim limitations should be accounted for in a patentability analysis attempts to answer. Until Bayer completed the COMPASS trial discussed above, the dosing regimens identified in the claims had not been proven clinically effective. The panel's focus on "claw back" thus leaves unanswered which claim limitations matter for purposes of patentability and which do not.

*Allergan* is again instructive. In that case, the challengers asserted that the claim terms at issue should be disregarded because they merely recited the "results of administering" the claimed formulation and therefore did not "result in a manipulative difference in the steps" of the claims. 935 F.3d at 1374 (quoting *BMS*, 246 F.3d at 1476). The *Allergan* court rejected that argument based on its conclusion that the claims, specification, and prosecution history demonstrated that the applicant "believed the increased efficacy and safety of the claimed methods to be material to patentability." *Id.* at 1374-76; *see supra* Section II.A. While, as explained above, the panel here distinguished *Allergan* on the basis that the claims were "written in open format," Slip Op. 6-7 (quoting *Allergan*, 935 F.3d. at 1378-79 (Prost, C.J., concurring)), that observation neither distinguishes the claims at issue, nor elucidates why policy concerns dictate differing outcomes between cases, *see supra* Section II.A.

In embracing "claw back" considerations, the panel decision thus highlights the differences between the approaches offered by this Court's case law, and reinforces the conclusion that *en banc* review is appropriate.

## III.    A Proposed Resolution of the Court's Precedent.

Bayer submits that the appropriate way to resolve the Court's conflicting authority is for the *en banc* Court to clarify as follows:

- If a question is raised as to whether a limitation in the body of a claim is non-limiting (*i.e.*, should not be accounted for in assessing patentability), then a court should evaluate that question under the "material to patentability" standard as articulated in *Allergan*. If the court concludes that the limitation is material to patentability, then it must be considered with the remainder of the claim in evaluating whether the claim satisfies the criteria for patentability. Otherwise, the limitation may be deemed non-limiting and thus discounted.

- If the limitation is deemed material to patentability—but is nevertheless *an instructional limitation*—then a court should consider whether the printed-matter doctrine applies. Under that doctrine, a court may evaluate whether the limitation has a "new and unobvious functional relationship" to the claimed method as set forth in *King*. 616 F.3d at 1279 (quoting *Ngai*, 367 F.3d at 1338). To that end, this Court has stated that the printed-matter doctrine addresses the question of whether a claim recites "patent eligible subject matter under 35 U.S.C. § 101." *Praxair*, 890 F.3d at 1032. Thus, if a claim term is deemed to be "printed matter," it may nevertheless be deemed not to carry any patentable weight as "functionally unrelated" because it fails to satisfy

Section 101, even if it must be treated as a limitation under the *Allergan* test.

- The test articulated above need not further implicate any policy considerations, nor does it require a court to evaluate whether the limitation seeks to "claw back" a prior art method. Any such concerns can be addressed by the standard criteria under 35 U.S.C. §§ 102-103.

- Finally, as applied to this case, the above test warrants vacatur of the panel's decision with respect to claims 1-4. The limitation "clinically proven effective" is material to patentability, and it is not an instructional limitation. This Court's printed-matter doctrine does not apply, and Respondents waived any reliance on the doctrine before the Board.

## CONCLUSION

For the foregoing reasons, Bayer respectfully requests that this Court rehear this appeal *en banc*.

Respectfully submitted,

OCTOBER 22, 2025

/s/ Dov P. Grossman
DOV. P. GROSSMAN
ALEXANDER S. ZOLAN
BEN PICOZZI
**WILLIAMS & CONNOLLY LLP**
680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
dgrossman@wc.com
azolan@wc.com
bpicozzi@wc.com

*Attorneys for Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2025, Appellant Bayer Pharma Aktiengesellschaft's Petition for Rehearing *En Banc* was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Respectfully submitted,

OCTOBER 22, 2025

/s/ Dov P. Grossman
DOV. P. GROSSMAN
**WILLIAMS & CONNOLLY LLP**
680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000

*Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitation of Fed. R. App. P. 32(a) and Federal Circuit Rule 40(d)(3). This petition contains 3,786 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2.      This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman style.

Respectfully submitted,

OCTOBER 22, 2025

/s/ Dov P. Grossman
DOV. P. GROSSMAN
**WILLIAMS & CONNOLLY LLP**
680 MAINE AVENUE SW
WASHINGTON, DC  20024
(202) 434-5000

*Attorney for Appellant*

# ADDENDUM

# United States Court of Appeals for the Federal Circuit

———————————

**BAYER PHARMA AKTIENGESELLSCHAFT,**
*Appellant*

**v.**

**MYLAN PHARMACEUTICALS INC., TEVA PHARMACEUTICALS USA, INC., INVAGEN PHARMACEUTICALS INC.,**
*Appellees*

———————————

2023-2434

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-00517, IPR2022-01513, IPR2022-01515.

———————————

Decided: September 23, 2025

———————————

Dov Philip Grossman, Williams & Connolly LLP, Washington, DC, argued for appellant. Also represented by Ben Picozzi, Alexander Steinway Zolan.

Wendy L. Devine, Wilson, Sonsini, Goodrich & Rosati, PC, San Francisco, CA, argued for all appellees. Appellee Mylan Pharmaceuticals Inc. also represented by Kelsey Catina, Seattle, WA; Tasha Thomas, Richard Torczon, Washington, DC; Matthew Greinert, Mylan, Canonsburg, PA.

JOHN CHRISTOPHER ROZENDAAL, Sterne Kessler Goldstein & Fox PLLC, Washington, DC, for appellee Teva Pharmaceuticals USA, Inc.   Also represented by CHANDRIKA VIRA.

A. NEAL SETH, Wiley Rein, LLP, Washington, DC, for appellee InvaGen Pharmaceuticals Inc.  Also represented by TERESA MARIE SUMMERS.

————————————

Before MOORE, *Chief Judge*, CUNNINGHAM, *Circuit Judge*, and SCARSI, *District Judge*.[1]

MOORE, *Chief Judge*.

Bayer Pharma Aktiengesellschaft (Bayer) appeals a final written decision (FWD) of the Patent Trial and Appeal Board (Board) holding claims 1–2 of U.S. Patent No. 10,828,310 unpatentable as anticipated and claims 1–8 unpatentable as obvious.  For the following reasons, we affirm-in-part, vacate-in-part, and remand for further proceedings.

## BACKGROUND

Bayer owns the '310 patent, which describes the results of a phase III clinical trial called "COMPASS" that evaluated the efficacy and safety of administering rivaroxaban with and without aspirin for the prevention of major adverse cardiac events. '310 patent at 3:27–34, 13:38–18:51. The claims are directed to methods for reducing the risk of cardiovascular events in patients with coronary artery disease (CAD) and/or peripheral artery disease (PAD) by

————————————

[1]    Honorable Mark C. Scarsi, District Judge, United States District Court for the Central District of California, sitting by designation.

administering rivaroxaban and aspirin. *Id.* at 1:16–19, 2:1–3, 3:47–55. Claim 1 is illustrative:

> 1. A method of reducing the risk of myocardial infarction, stroke or cardiovascular death in a human patient with coronary artery disease and/or peripheral artery disease, comprising administering to the human patient rivaroxaban and aspirin in amounts that are *clinically proven effective* in reducing the risk of myocardial infarction, stroke or cardiovascular death in a human patient with coronary artery disease and/or peripheral arterial disease, wherein *rivaroxaban is administered in an amount of 2.5 mg twice daily* and *aspirin is administered in an amount of 75-100 mg daily*.

*Id.* at 18:56–65 (emphases added).

Claim 5 of the '310 patent is similar to claim 1 but specifically recites a once daily administration of "a first product comprising rivaroxaban and aspirin" and "a second product comprising rivaroxaban":

> 5. A method of reducing the risk of myocardial infarction, stroke or cardiovascular death in a human patient with coronary artery disease and/or peripheral artery disease, the method comprising administering to the human patient rivaroxaban and aspirin in amounts that are *clinically proven effective* in reducing the risk of myocardial infarction, stroke or cardiovascular death in a human patient with coronary artery disease and/or peripheral arterial disease, wherein the method comprises once daily administration of a *first product comprising rivaroxaban and aspirin* and a *second product comprising rivaroxaban*, and further wherein *the first product comprises 2.5 mg rivaroxaban and 75-100 mg aspirin* and *the second product comprises 2.5 mg rivaroxaban.*

*Id.* at 19:5–17 (emphases added).

Mylan Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., and Invagen Pharmaceuticals, Inc. (collectively, Appellees) filed substantively identical petitions for *inter partes* review (IPR) challenging the claims of the '310 patent, and the Board joined those proceedings. J.A. 2. Among other grounds, Appellees argued claims 1–2 are anticipated by Foley[2] and claims 1–8 are obvious over Foley alone or in combination with Plosker.[3] J.A. 8. The Board held the challenged claims unpatentable based on these grounds and did not reach Appellees' other grounds. J.A. 1–40. Bayer appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Bayer argues the Board erred in (1) construing "clinically proven effective" as non-limiting and finding, in the alternative, that it is inherently anticipated; (2) construing "first product comprising rivaroxaban and aspirin" to encompass administration of rivaroxaban and aspirin as separate dosage forms; (3) failing to articulate why a skilled

---

[2] T. Raymond Foley, Stephen W. Waldo & Ehrin J. Armstrong, 21 VASCULAR MED. 156, 156–69 (2016). J.A. 2341–54. Foley is a 2016 journal article that summarizes the then-ongoing COMPASS trial (including its dosing regimen of 2.5 mg rivaroxaban twice daily and 100 mg aspirin once daily) without disclosing the trial results. J.A. 2352; *see also* J.A. 22–23.

[3] Greg L. Plosker, *Rivaroxaban: A Review of Its Use in Acute Coronary Syndromes*, 74 DRUGS 451, 451–64 (2014). J.A. 2355–68. Plosker is a 2014 journal article that describes a phase III trial called "ATLAS ACS 2-TIMI 51," which discloses a dosing regimen of 2.5 mg rivaroxaban twice daily, co-administered with 75–100 mg aspirin. J.A. 2355, 2364; *see also* J.A. 27.

BAYER PHARMA AKTIENGESELLSCHAFT v.                    5
MYLAN PHARMACEUTICALS INC.

artisan would have combined Foley and Plosker with a reasonable expectation of success; and (4) failing to analyze whether clinical proof of efficacy was an unexpected result. Appellant's Br. 7–8, 25–48, 55–62.

### I.    "clinically proven effective"

We review the Board's claim construction de novo except for subsidiary fact findings based on extrinsic evidence, which we review for substantial evidence. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 808 (Fed. Cir. 2021). Anticipation, including whether a claim limitation is inherent in a prior art reference, is a question of fact we review for substantial evidence. *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1342 (Fed. Cir. 2018).

The Board concluded "clinically proven effective" is non-limiting and found, in the alternative, that it is inherently anticipated. J.A. 13–19, 25–27. Bayer argues "clinically proven effective" is limiting and requires clinical proof of efficacy as shown, for example, by results from a clinical trial. Appellant's Br. 27–40. Bayer also argues "clinically proven effective," if construed as limiting, is not inherently anticipated by Appellees' prior art. *Id.* at 40–45.

We do not decide whether "clinically proven effective" is limiting in relation to claims 1–8 because we conclude that, even if the phrase were limiting, "clinically proven effective" would still be a functionally unrelated limitation that fails to make the challenged claims patentable. In *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1277–79 (Fed. Cir. 2010), we held that an otherwise anticipated method of treatment was not made patentable simply by adding a limitation of "informing the patient" about the benefits of the anticipated method. "[T]he relevant inquiry . . . [was] whether the additional instructional limitation . . . [had] a 'new and unobvious functional relationship' with the known method of [treatment]." *Id.* at 1279 (quoting *In re Ngai*, 367 F.3d 1336, 1338 (Fed. Cir.

2004)). As we explained in *King*, the rationale underlying this inquiry is "preventing the indefinite patenting of known products [and methods] by the simple inclusion of novel, yet functionally unrelated limitations." *Id.*

The rationale underlying *King* applies to the present case. Just as it would be troubling if one could patent a long-practiced method of treatment simply by adding an instructional limitation or a limitation referencing a subsequent accolade (*e.g.*, "Best Drug of 2026"), *see* Oral Arg. at 5:47–6:55, we find it equally troubling that one could claw back from the public domain an anticipated method of treatment merely by adding a limitation that the method subsequently performed well in a clinical trial. Like the instructional limitation in *King*, "clinically proven effective" has no "functional relationship" with the claimed method. 616 F.3d at 1279. Even if the term required clinical proof of efficacy, such proof "in no way transforms the process of taking the drug[s]" at the amounts and frequencies expressly recited in the claims. *Id.* "Irrespective of whether the [anticipated treatment regime is proven to be clinically effective], the actual method . . . is the same." *Id.* In other words, even if the phrase were limiting, "clinically proven effective" cannot make the challenged claims patentable because it would still lack a "new and unobvious functional relationship" with the remainder of the claimed methods, which the Board determined to be unpatentable.

Bayer argues *Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370 (Fed. Cir. 2019) controls and requires us to treat "clinically proven effective" as material to patentability. Appellant's Br. 36–38; Oral Arg. at 6:55–7:34. We do not agree. In *Allergan*, we held certain "wherein" clauses that specified minimum safety and efficacy requirements were material to the patentability of a claimed method of treatment involving "topically administering twice daily to an affected eye a single composition comprising 0.2% w/v brimonidine tartrate and 0.68% w/v timolol maleate." 935 F.3d at 1372–76. *Allergan* is distinguishable from the

present case, however, because the claims at issue were "written in open format" with the "wherein" clauses modifying the overall composition rather than any specifically recited ingredients within the composition. *Id.* at 1378–79 (Prost, C.J., concurring). As such, the "wherein" clauses were functional limitations that limited the open-ended universe of potential compositions that included 0.2% w/v brimonidine and 0.68% w/v timolol maleate by specifying safety and efficacy benchmarks the overall composition must meet. *See Allergan*, 935 F.3d at 1379; *see also* Appellees' Br. 35. "Clinically proven effective," serves no analogous function in the claims at issue here. Because the claims of the '310 patent already specify the exact dosages of rivaroxaban and aspirin to be administered to a patient, the additional limitation that the amounts be "clinically proven effective" does not further define the dosages that are administered.

For the foregoing reasons, we conclude "clinically proven effective"—even if limiting—cannot breathe patentability into the challenged claims as a functionally unrelated limitation. Accordingly, we do not reach whether "clinically proven effective" is inherently anticipated. *See King*, 616 F.3d at 1278–79 (concluding the functionally unrelated "informing" limitation did not make an otherwise anticipated method of treatment patentable despite the district court never expressly finding the "informing" limitation disclosed in the prior art).

## II. "first product"

The Board concluded "first product comprising rivaroxaban and aspirin," in relation to claims 5–8, is not limited to a single dosage form, and if administered separately, the dosage forms can be administered simultaneously or sequentially. J.A. 20–21. Bayer argues the Board erred because the "first product" must be "a single dosage form" that "include[s] or contain[s] both rivaroxaban and aspirin." Appellant's Br. 46–47. We agree.

The plain language of the claims requires a single dosage form that includes both rivaroxaban and aspirin. The claims recite "administration of *a first product* comprising rivaroxaban *and* aspirin," not simply "administration of rivaroxaban and aspirin." '310 patent at 19:13–14 (emphases added). "Claims must be interpreted with an eye toward giving effect to all terms in the claim." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) (internal quotation omitted). The Board's interpretation of "first product" as encompassing separate dosage forms violates this basic claim construction principle by rendering "a first product comprising" meaningless. Moreover, while Appellees argue a product can include "a kit or a blister pack" containing "multiple, separate components," Appellees' Br. 44, this would result in an unnatural reading of claim 5, which recites "administration of a first product," not administration of *components within* a first product, '310 patent at 19:13–14.

The remainder of the specification of the '310 patent is also consistent with "first product" requiring a single dosage. For example, the specification states that "combination therapy may be administered using separate dosage forms for rivaroxaban and aspirin, or using *a combination dosage form containing both rivaroxaban and aspirin.*" *Id.* at 8:65–9:1 (emphasis added). The Board reached a different construction by equating "first product" to the broader term "combination therapy," which includes separate dosage forms *and* a combination dosage form. J.A. 20–21; *see also* Appellees' Br. 44–45. We see no indication, however, that "first product comprising rivaroxaban and aspirin" is used synonymously with "combination therapy" rather than "a combination dosage form containing both rivaroxaban and aspirin." On the contrary, we agree with Bayer that "first product comprising rivaroxaban and aspirin" more closely mirrors the latter, narrower term. *See* Appellant's Br. 47–48. While not every "product" must be a

combination dosage form, the claim language here is more limiting because it recites "first product *comprising rivaroxaban and aspirin*," which directly tracks with the specification's recitation of "a combination dosage form *containing both rivaroxaban and aspirin*." '310 patent at 8:65–9:1, 19:13–14 (emphases added).

Appellees argue this claim construction is moot because Bayer "forfeited any resulting benefit by failing to show why its construction overcomes [Appellees'] obviousness arguments." Appellees' Br. 47. We do not agree. Appellees bear the burden of proving the challenged claims are unpatentable under the correct construction. *Fanduel, Inc. v. Interactive Games LLC*, 966 F.3d 1334, 1341 (Fed. Cir. 2020) ("the burden of proving invalidity in an IPR remains on the petitioner throughout the proceeding") (citing 35 U.S.C. § 316(e)). Whether or not Appellees met this burden is an issue the Board should decide in the first instance. Accordingly, we remand for further consideration of Appellees' obviousness arguments under the correct construction of the "first product" term.

### III. Combination of Foley and Plosker

Next, Bayer argues the Board failed to articulate why a skilled artisan would have combined Foley and Plosker with a reasonable expectation of success in concluding dependent claims 3–4 and 6–7 are obvious. Appellant's Br. 55–58. We do not agree.

"[T]he [Board] must articulate a *reason why* a [skilled artisan] would combine the prior art references." *In re Nuvasive, Inc.*, 842 F.3d 1376, 1382 (Fed. Cir. 2016). However, "[w]hether a skilled artisan would have been motivated to combine references or would have had a reasonable expectation of success in combining references are questions of fact reviewed for substantial evidence." *Elekta Ltd. v. ZAP Surgical Sys., Inc.*, 81 F.4th 1368, 1374 (Fed. Cir. 2023).

Claims 3 and 7 depend from independent claims 1 and 5, respectively, and recite administering 81 mg aspirin daily. '310 patent at 19:1–2 (claim 3), 19:20–21 (claim 7). Claims 4 and 6 depend from independent claims 1 and 5, respectively, and recite administering 75 mg aspirin daily. *Id.* at 19:3–4 (claim 4), 19:18–19 (claim 6). The Board expressly found a skilled artisan "would have had a reason to use 75 mg and 81 mg aspirin daily instead of 100 mg aspirin taught by Foley with a reasonable expectation of success, because those dosages simply represent the dosage amounts of aspirin available throughout the world" and are "consistent with the dosage range taught by Plosker." J.A. 33–34 (citing J.A. 1396–97 (Zusman Decl.); J.A. 2364 (Plosker); '310 patent at 9:21–22). Thus, we see no failure by the Board to articulate an adequately supported rationale for why a skilled artisan would have combined Foley and Plosker with a reasonable expectation of success, especially where the record indicates that both references taught a dosage regimen for "reducing the risk of myocardial infarction, stroke, or cardiovascular death." J.A. 1396 ¶ 354, 1398 ¶ 360 (Zusman Decl.); *see also* J.A. 33 (citing Zusman Decl.).

## IV. Unexpected Results

Finally, Bayer argues the Board erred by failing to analyze its secondary evidence that "the fact that COMPASS provided clinical proof of efficacy was itself an unexpected property." Appellant's Br. 58; *see also id.* at 58–62. We do not agree.

Secondary considerations of nonobviousness, including unexpected results, "must be taken into account" when present. *Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*, 752 F.3d 967, 977 (Fed. Cir. 2014). However, "[f]or objective evidence of secondary considerations to be relevant, there must be a nexus between the merits of the claimed invention and the objective evidence." *Volvo Penta of the Ams., LLC v. Brunswick Corp.*, 81 F.4th 1202, 1210 (Fed.

Cir. 2023). "Where the offered secondary consideration actually results from something other than what is both claimed and *novel* in the claim, there is no nexus to the merits of the claimed invention." *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011).

As the Board noted in its FWD, Bayer's "arguments and evidence of unexpected results rely solely on the term 'clinically proven effective,' as recited in the claims." J.A. 35–36. Because we conclude that "clinically proven effective" is a functionally unrelated limitation that fails to breathe patentability into the challenged claims, Bayer's evidence that clinical proof of efficacy was unexpected has no connection to the "merits of the claimed invention." *Volvo*, 81 F.4th at 1210. Absent such nexus, we conclude Bayer's evidence of secondary considerations "do[es] not compel a holding of nonobviousness." *In re Huai-Hung Kao*, 639 F.3d at 1074.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's judgment holding claims 1–4 unpatentable, vacate the judgment of unpatentability with respect to claims 5–8, and remand for further proceedings consistent with this opinion.

## AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

### COSTS

No costs.